In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2070

AFFYMAX, INC.,

*Plaintiff-Appellee,*

*v.*

ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., and
JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &
DEVELOPMENT, L.L.C.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 6216—**Matthew F. Kennelly**, *Judge.*

ARGUED SEPTEMBER 16, 2011—DECIDED OCTOBER 3, 2011

Before EASTERBROOK, *Chief Judge*, and WOOD and
TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. In 1992 two companies
began a joint venture to develop peptide compounds.
The parties' names have changed in corporate mergers
or restructurings; we use their current names—Affymax
and Ortho-McNeil-Janssen Pharmaceuticals (Ortho for

short). The agreement provides that any inventions created by the parties' joint efforts are jointly owned, but that inventions attributable to a single party are owned by that party. The agreement also says that disputes will be arbitrated.

The joint venture produced commercially valuable discoveries. Affymax sued in 2004, seeking a declaration that it owns the patents and patent applications in two groups: the '940 family and the '078 family.[†] The district court ordered arbitration. 420 F. Supp. 2d 876 (N.D. Ill. 2006). The International Center for Dispute Resolution appointed a three-member panel, which oversaw extensive discovery and held a 35-day hearing. The panel's award, issued in October 2010, concludes that the parties jointly invented, and thus jointly own, the '940 family, but that Ortho solely invented and owns the '078 family. Affymax asked the district court to set aside this award, but the judge confirmed most of the panel's rulings—particularly the conclusion that the parties jointly own the '940 family and that Ortho solely invented the technology reflected in the '078

---

[†] The '940 family comprises U.S. Patent Applications 08/155,940 and 11/855,948; U.S. Patents 5,830,851, 5,773,569, and 5,986,047; World Intellectual Property Organization Patents PCT/US94/13147 and PCT/US96/09810; and European Patent EP0886648. The '078 family comprises U.S. Patent 5,767,078; European Patent Application EP96/918,317; Japanese Patent 3,998,043; Australian Patent 732,294; Australian Patent Application 2004/203,690; Canadian Patent Application 2,228,277; and Mexican Patent 203,378.

patent. But the court vacated the award to the extent that the panel ruled in Ortho's favor on the foreign patents corresponding to the '078 U.S. patent. 2011 U.S. Dist. LEXIS 28679 (N.D. Ill. Mar. 21, 2011). The judge directed the panel to reconsider.

As the district judge saw things, the panel "manifestly disregarded the law" (2011 U.S. Dist. LEXIS 28679 at *18) by awarding Ortho ownership of the foreign patents without analysis: "the panel should have assessed inventorship separately with regard to the foreign patents before determining their ownership." *Id*. at *17. The district judge inferred from the lack of discussion that the arbitrators must have based their award on some factor other than inventorship. By exceeding their remit, the district judge concluded, the arbitrators "manifestly disregarded the law." Ortho appealed to us from the aspect of the judgment that vacates part of the award; Affymax has appealed to the Federal Circuit from the aspect of the judgment that confirms the rest of the award.

Although the district judge's decision is not final to the extent it remanded the controversy to the arbitrator, Ortho's appeal is authorized by 9 U.S.C. §16(a)(1)(E), which permits appeals from judicial orders modifying, correcting, or vacating arbitral awards, whether or not the judicial orders are properly called "final decisions." And this court is the right forum for the appeal. The Federal Circuit's appellate jurisdiction is exclusive when the district court's jurisdiction rests on 28 U.S.C. §1338, which covers patent disputes. This, however, is

a contract dispute rather than a patent dispute. Neither Affymax nor Ortho seeks a remedy provided by the patent laws. The parties' underlying dispute concerns the meaning and application of the 1992 contract, and the immediate dispute concerns the application of the Federal Arbitration Act, 9 U.S.C. §§ 1–16, which governs judicial review of arbitral awards that grow out of transactions in interstate commerce (as this award does).

Judge Friendly's famous opinion in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), holds that controversies about contracts that allocate ownership of copyrights arise under the contract, not the copyright laws. This circuit has adopted that approach for trademarks as well as copyrights. See, e.g., *International Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912 (7th Cir. 2001). It is logically applicable to all intellectual property, including patents. Both the Federal Circuit and this circuit have held so explicitly, see *Kennedy v. Wright*, 851 F.2d 963, 966 (7th Cir. 1988); *Beghin-Say International, Inc. v. Rasmussen*, 733 F.2d 1568, 1571 (Fed. Cir. 1984), and the Supreme Court reached the same conclusion in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), though without citing *Eliscu*. The principle that a contractual dispute about ownership does not arise under the patent laws puts this case within the jurisdiction of the regional circuits, which review other contractual controversies that land in arbitration.

The Federal Arbitration Act authorizes a court to vacate an award for any of four reasons:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a). This list is exclusive; neither judges nor contracting parties can expand it. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–89 (2008). Disregard of the law is not on the statutory list. The district judge's conclusion that the arbitrators disregarded the law by failing to discuss the foreign patents separately from the domestic patents therefore does not justify vacating the award.

We held in *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577 (7th Cir. 2001), that, despite the limited scope of §10(a), a court may set aside an award that directs the parties to violate the legal rights of third persons who did not consent to the arbitration. Thus an award directing the parties to form a cartel, and fix prices or output, could be vacated as a violation of the Sherman

Antitrust Act, even though the Federal Arbitration Act does not authorize the award's vacatur. Arbitration implements contracts, and what the parties cannot do through an express contract they cannot do through an arbitrator. But Affymax does not contend that the panel's award directs Ortho to violate any rule of positive law designed for the protection of third parties. Nor does Affymax contend that different arbitrators have issued incompatible awards, only one of which could be enforced without commanding the parties to do the impossible. See *Jonites v. Exelon Corp.*, 522 F.3d 721 (7th Cir. 2008).

Some decisions of this circuit after *George Watts & Son* have implied that "manifest violation of law" has some different or broader content. See, e.g., *Edstrom Industries, Inc. v. Companion Life Insurance Co.*, 516 F.3d 546, 552 (7th Cir. 2008). But these decisions did not purport to overrule *George Watts & Son*. More importantly, none survives *Hall Street Associates*. Except to the extent recognized in *George Watts & Son*, "manifest disregard of the law" is not a ground on which a court may reject an arbitrator's award under the Federal Arbitration Act. Accord, *Ramos-Santiago v. United Parcel Service*, 524 F.3d 120, 124 n.3 (1st Cir. 2008); *Citigroup Global Markets Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009); *Medicine Shoppe International, Inc. v. Turner Investments, Inc.*, 614 F.3d 485 (8th Cir. 2010).

That's not the only problem with the district court's decision. What law, precisely, did the arbitrators violate? The district court's opinion does not say. No

rule of law requires arbitrators to render opinions—or, having chosen to write an opinion, to discuss every issue that the parties contested. Federal courts themselves often let issues pass in silence, and arbitration need not be as formal as litigation. Many an arbitration ends with an award saying who won but omitting reasons. Administrative law judges can't decide that way but must explain themselves; arbitrators are free to act summarily, unless the parties' contract requires an opinion. The 1992 joint-venture contract does not call for the arbitrators to discuss every issue at length, or at all.

Perhaps the district judge just chose his words inexactly. Section 10(a)(4) permits a court to vacate an award if the arbitrators exceeded their powers. The 1992 contract called for the arbitrators to decide who invented the technology reflected in the patents; ownership tracks inventorship. If the arbitrators resolved the dispute on some other ground—for example, a belief that one of the inventions is not patentable, or a conclusion that ownership should be shared so that all parties make a profit—the award would be set aside under §10(a)(4). Disregard of the law comes within §10(a)(4) if it also amounts to disregard of the contract that conveys the arbitrators' authority.

Some language in the district court's opinion suggests that the judge thought that the arbitrators had defied the contract by making a decision on a ground other than the (contractual) principle that ownership follows inventorship. Yet the judge did not identify any

language in the award saying this. Instead the judge inferred from silence that the arbitrators must have had an extra-contractual ground. That's a logical error. Silence is just silence.

Affymax defends its judgment by pointing to some of the award's language. This avoids the problem of inferring faithlessness from silence. But the language that Affymax finds portentous does not even hint that the arbitrators did something different from what their charge required. It would not serve any purpose to trudge through the award line-by-line, nor would such scrutiny be compatible with the principle that judicial review of arbitral awards is deferential. See *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001). It suffices to say that neither what the arbitrators said, nor what they omitted, supports an inference that what they *did* was other than decide who invented the technology in question.

As it happens, the arbitrators had no reason to discuss the foreign patents separately from the domestic patents. Both Affymax and Ortho filed briefs and other papers telling the panel that inventorship (and thus ownership) of all patents in a single family is controlled by who made the invention that led to the principal domestic patent in that family. The parties disagreed about who invented what, but they agreed that there were only two functional issues, one for each patent family. The award reflects that agreement and therefore evinces faithfulness to the task at hand, rather than disregard of the law or the panel's limited powers.

Affymax believes that the arbitrators erred in resolving the questions put to them. But "the question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987). This panel applied the 1992 contract, and its award must be enforced.

The district court's judgment is reversed (to the extent appealed from), and the case is remanded with instructions to confirm the award in full.